# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Theodore Leach and James Kerrigan,

    Plaintiffs

v.

Dennett Ingram, et al.,

    Defendants

And all other claims and parties

Case No.: 2:22-cv-01809-JAD-NJK

**Order Granting in Part Emergency Motion to Stay Case, Granting Motion to Seal, and to Ordering Plaintiffs to Show Cause Whether Plaintiff James Kerrigan has the Capacity to Maintain this Suit**

[ECF Nos. 76, 78]

REDACTED for information contained in sealed exhibits; unredacted version has been separately filed under seal

Plaintiffs Theodore Leach and James Kerrigan sue Dennett Ingram, EpicUp Holdings, Inc. (Arizona), EpicUp PTE, Ltd, and EpicUp Holdings, Inc. (Wyoming) (collectively, Ingram) over the failed sale of IP addresses. The defendants responded with counterclaims against Leach and James,[1] as well as their corporate entities J.F.K. Investments, Inc. and T.J.L. Investments, Inc. The parties have been embroiled in discovery disputes throughout this case, culminating in an order compelling James to produce medical records after he showed signs of mental incapacity at his deposition. With those records in hand, the defendants now move—on an emergency basis because summary-judgment motions are due imminently—to stay this case pending a determination as to whether James is incompetent to sue without proper representation under Federal Rule of Civil Procedure 25(b). The plaintiffs oppose that motion, contending that the defendants don't have standing to bring a Rule 25(b) motion against an opposing party, and

---

[1] The dispute currently pending before the court concerns James Kerrigan and his son Jason Kerrigan. I refer to each individual by his first name for clarity's sake, and I intend no disrespect by doing so.

they offer a declaration from James's doctor opining that while he suffers from impairments to his ability to communicate and make decisions, he is not incapacitated.

Regardless of whether the defendants have standing to bring a Rule 25(b) motion, this court is independently obligated to consider whether a litigant is adequately represented if information is brought to the court suggesting that he might not be. So I grant the defendants' motion in part and stay summary-judgment deadlines until the court makes a determination as to whether James is incompetent to sue under Rule 17(c) and, if so, whether he is adequately represented. I order James's attorney to file supplemental briefing answering specific questions about James's capacity and representation. I also grant the defendants' motion to seal James's medical records.

## Background

This lawsuit stems from the sale of some IP addresses. Theodore Leach and James Kerrigan loaned Dennett Ingram $200,000 so that he could buy a block of IP addresses after Ingram promised that he could flip the addresses, sell them for a profit, and give the plaintiffs 20% of that sale. Ingram negotiated a second sale, but it didn't go through because the title to the IP addresses was flawed. While Ingram was working out the title issues, the parties agreed to lease the addresses and split the leasing income so that plaintiffs would receive 50%. But Ingram never repaid the $200,000 loan, never gave plaintiffs 20% of the pending sale, and never remitted 50% of any leasing proceeds.[2] So plaintiffs sued, and Ingram countersued.

---

[2] These facts were taken from the plaintiffs' operative complaint (ECF No. 1-1) and are not intended as findings of fact. I also don't wade into the factual issues raised in plaintiffs' motion to amend their complaint or in the avalanche of briefing related to that motion. *See* ECF Nos. 61, 63, 64, 65, 68, 70, 72, 73, 74, 75.

At one point it came to light that James's son Jason held a power of attorney to make some decisions on his father's behalf.[3] And while the parties were attempting to schedule depositions in this case, James's former counsel told defendants' counsel that "he wished to withdraw James as a witness, citing his age and capacity, noting [that] he was being treated for dementia, and had 'good days and bad days.'"[4] In response to this insinuation of mental incapacity, defendants served discovery requests seeking James's medical records in September 2023.[5] "Shortly thereafter," James's counsel "agreed to produce James for his deposition."[6] The deposition took place in October 2023 and, according to defendants, raised questions about James's competency.[7] Jason was deposed a couple of days later and confirmed that he had power of attorney since 2021 and that his father suffered from several medical conditions, including Parkinson's and diabetes.[8] During that deposition, James's then-counsel told the defendants' counsel that James's medical records would be produced, and he discussed the possibility that a guardianship proceeding would be instituted for James.[9]

But before medical records were produced, James fired his lawyer and hired current counsel, Mr. James W. Pengilly, Esq.[10] Pengilly failed to respond by the request's 30-day

---

[3] *See* ECF No. 41-2 at ¶ 6 (Miles Clark, Esq.'s declaration, attached to defendants' December 22, 2023, motion to compel production of James's medical records).

[4] *Id.* at ¶ 34.

[5] *Id.* at ¶ 35.

[6] *Id.*

[7] ECF No. 76 at 5; *see also* ECF No. 53-25 (transcript of James's deposition).

[8] ECF No. 76 at 5; *see also* ECF No. 53-27 (transcript of Jason's deposition).

[9] ECF No. 53-2 at ¶¶ 39, 42–43.

[10] It's unknown if James personally fired his lawyer or if someone else (like his son) did so on his behalf.

3

deadline and then filed objections two months late.[11]  The magistrate judge granted the defendants' motion to strike the untimely objections and compel production of the requested discovery,[12] and in March 2024 James served medical records reflecting that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.[13]  And on April 5, 2024, his doctor provided a declaration explaining that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆[14] ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.[15]

In response to this information, the defendants informed James's counsel that "this creates a host of issues for this litigation" because it is not clear that James is capable of pursuing his claims or defending against the defendants' counterclaims.[16]  Defense counsel also expressed concern that the 2021 power of attorney between James and Jason may not still be operative, expressing his belief that the PoA is "nondurable" and was thus terminated with James's incapacity.[17]  The defendants suggested a stipulation to stay case deadlines and seek court

---

[11] *See* ECF No. 53.

[12] ECF No. 59.

[13] *See* ECF No. 77-3 (medical records, filed under seal).

[14] ECF No. 77-2 at ¶ 4 (declaration of Dr. Odinachi Oguh, filed under seal).

[15] *Id.* at ¶¶ 7, 9.

[16] ECF No. 77-4 (meet-and-confer letter from defendants' counsel, filed under seal).  While this document remains under seal, I cite to the portions that do not concern James's medical condition because those portions do not contain private or confidential information.

[17] *Id.*; *see also* ECF No. 76-5 (2021 Power of Attorney).

intervention to determine whether the 2021 power of attorney permits Jason to pursue the case on James's behalf.[18] During a telephonic meet-and-confer on April 17, 2024, James's counsel aggressively rejected that suggestion,[19] so the defendants filed an "emergency motion suggesting the Rule 25(b) incompetency of Plaintiff James Kerrigan and to stay case deadlines pending determination of the same."[20] Defendants contend that this matter needs to be resolved on an emergency basis because summary-judgment motions are due on May 6, 2024, and failing to resolve this motion before then could mean that "summary judgment briefing will have to proceed against a party not properly before the court."[21]

## Discussion

### A. The court has an obligation to determine James's competency and representation.

The defendants purport to bring this motion under Federal Rule of Civil Procedure (FRCP) 25(b), which states that, "[i]f a party becomes incompetent, the court may, on motion, permit the action to be continued by or against the party's representative."[22] James contends that they don't have standing to move for this relief, arguing that the rule was not intended to allow an opposing party to suggest the incompetence of his adversary.[23] The defendants offer no on-point authority supporting their position that they can move to substitute the opposing party, but neither do the plaintiffs cite any authority reasoning that defendants can't.

---

[18] ECF No. 77-4.
[19] ECF No. 76-2 at ¶¶ 21–23.
[20] ECF No. 76.
[21] *Id.* at 4.
[22] Fed. R. Civ. P. 25(b).
[23] ECF No. 81 at 3–4.

But I need not decide whether an opposing party can bring a Rule 25(b) motion because the defendants' motion has presented information suggesting the incompetency and inadequate representation of a party before this court. FRCP 17, the rule governing who has the capacity to sue in federal court, dictates the representation of incompetent persons. It gives authority to sue on behalf of an incompetent person to duly appointed representatives (i.e., "a general guardian, a committee, a conservator, or a like fiduciary") or, if "an incompetent person does not have a duly appointed representative," he "may sue by a next friend or by a guardian ad litem."[24] If an incompetent person is not represented, the rule requires that "the court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."[25] While the court "need not appoint a guardian ad litem if it determines the person is or can be otherwise protected, it is under a legal obligation to consider whether the person is adequately protected."[26]

The defendants' motion, the medical records attached to it, and the history of James's involvement in this case trigger the court's legal obligation to consider whether James is competent to pursue this case without a representative. But the briefing on this motion doesn't adequately provide some of the information and argument that I need to resolve this issue, so I grant the defendants' motion in part and stay summary-judgment and pretrial deadlines until this issue is resolved.[27] And I order James, through his counsel Mr. Pengilly, to show cause as to

---

[24] Fed. R. Civ. P. 17(c)(1) & (2).

[25] Fed. R. Civ. P. 17(c)(2).

[26] *United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cnty., State of Wash.*, 795 F.2d 796, 805 (9th Cir. 1986) (noting that Rule 17(c) "requires a court to take whatever measures it deems proper to protect an incompetent person during litigation").

[27] *See Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989) ("If an infant or incompetent person is unrepresented, the court should not enter judgment which operates as a judgment on the merits without complying with Rule 17(c).").

6

whether James is competent, or whether he has an adequate representative to protect his interests in this case. In his response to this order to show cause, Mr. Pengilly must answer the following questions:

- What Nevada statute defines incompetency or incapacity to sue or be sued in a civil case?[28]
- If you are contending that James is competent under the appropriate definition, provide and explain any evidence that supports that contention.
- Is the 2021 power of attorney durable or non-durable?
- Is the 2021 power of attorney still operative, and does it give Jason legal authority to pursue or defend this lawsuit on James's behalf?
- Aside from anything related to the 2021 power of attorney, does anyone have legal authority to serve as James's representative in this case?
- If the court determines that a guardian ad litem must be appointed as James's representative, what is the standard for determining who should be appointed, and who do you contend should be appointed and why?

---

[28] An individual's capacity to sue in federal court is determined "by the law of the individual's domicile." Fed. R. Civ. P. 17(b)(1). James is a Nevada resident, so I look to Nevada law. In his response brief, Mr. Pengilly cites NRS 162A.070 to define incompetence, which defines "incapacity" for the purposes of determining various aspects of a power of attorney. But Pengilly doesn't explain why the power-of-attorney standard should be used for the purposes of determining whether a person has the capacity to sue or be sued in a civil case. Nevada's statutory scheme for guardianship of adults (NRS Chapter 159) defines and uses the terms "incapacitated" and "limited capacity," but that chapter says that its "provisions do not apply to guardians ad litem" unless otherwise stated. Nev. Rev. Stat. §§ 159.019, 159.022, 159.033. And the guardian-ad-litem provisions do not use the terms incapacitated, incompetent, or limited capacity. *Id.* at §§ 159.0455, 159.0487, 159.0806, 159.095. Instead, they use the term "protected person," which simply means "any person, other than a minor, for whom a guardian has been appointed." *Id.* at 159.0253.

7

**B.    The defendants' motion to seal is granted.**

The defendants move to seal documents related to James Kerrigan's medical conditions.[29] "The public has a 'general right to inspect and copy public records and documents including judicial records and documents.'"[30]  "Although the common law right of access is not absolute, '[courts] start with a strong presumption in favor of access to court records.'"[31]  "A party seeking to seal judicial records can overcome the strong presumption of access by providing 'sufficiently compelling reasons' that override the public policies favoring disclosure."[32]  "When ruling on a motion to seal court records, the district court must balance the competing interests of the public and the party seeking to seal judicial records."[33]

"To seal the records, the district court must articulate a factual basis for each compelling reason to seal[,] [which] must continue to exist to keep judicial records sealed."[34]  The Ninth Circuit has, however, "'carved out an exception to the presumption of access' to judicial records" that is "'expressly limited to' judicial records 'filed under seal when attached to a non-dispositive motion.'"[35]  "Under the exception, 'the usual presumption of the public's right is rebutted[,]'" so "a particularized showing of 'good cause' under [FRCP] 26(c) is sufficient to preserve the secrecy of sealed discovery documents attached to non-dispositive motions."[36]

---

[29] ECF No. 78.

[30] *In re Midland Nat. Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (quoting *Nixon v. Warner Commcns., Inc.*, 435 U.S. 589, 597 (1978)).

[31] *Id.* (quoting *Foltz v. St. Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[32] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[33] *Id.* (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

[34] *Id.* (citing *Kamakana*, 447 F.3d at 1179; *Foltz*, 331 F.3d at 1136).

[35] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[36] *Id.* (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002); *Foltz*, 331 F.3d at 1135, 1138).

1      I find that the higher-compelling reasons standard applies in this context because while the underlying motion itself isn't dispositive, my resolution of the motion and that facts sought to be sealed will impact this action's merits. I reviewed the sealed exhibits in camera and conclude that there are compelling reasons to seal those exhibits in their entirety and redact the underlying motion to remove mention of James's conditions. The exhibits contain private medical information, and I am satisfied that releasing the information contained in the exhibits could potentially damage the parties. So I grant the defendants' motion to seal.

## Conclusion

IT IS THEREFORE ORDERED that defendants' motion to seal **[ECF No. 78] is GRANTED**. The Clerk of Court is directed to **MAINTAIN THE SEAL on ECF No. 77 and its exhibits.**

IT IS FURTHER ORDERED that all deadlines in this case are **STAYED pending resolution of questions regarding James Kerrigan's competency.**

IT IS FURTHER ORDERED THAT James Kerrigan, through his attorney James W. Pengilly, Esq., is **ORDERED TO SHOW CAUSE by May 16, 2024, whether James has the capacity to sue on his own behalf or has an adequate representative to protect his interests**. In his response, which must be no longer than 10 pages, Pengilly must address the following issues, along with any other information or argument that he believes will assist the court or support his position:

- What Nevada statute defines incompetency or incapacity to sue or be sued in a civil case?
- If you are contending that James is competent under the appropriate definition, provide and explain any evidence that supports that contention.

- Is the 2021 power of attorney durable or non-durable?
- Is the 2021 power of attorney still operative, and does it give Jason legal authority to pursue or defend this lawsuit on James's behalf?
- Aside from anything related to the 2021 power of attorney, does anyone have legal authority to serve as James's representative in this case?
- If the court determines that a guardian ad litem must be appointed as James's representative, what is the standard for determining who should be appointed, and who do you contend should be appointed and why?

**The defendants may file a response of no longer than 10 pages** addressing the same questions, along with any other information or argument that they believe will assist the court, **by May 30, 2024**. Mr. Pengilly will have until **June 6, 2024, to file any reply**, which must not exceed 5 pages, exclusive of exhibits.

_____
U.S. District Judge Jennifer A. Dorsey
May 3, 2024