**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Theodore Leach and James Kerrigan,

    Plaintiffs

v.

Dennett Ingram, et al.,

    Defendants

And all other claims and parties

Case No.: 2:22-cv-01809-JAD-NJK

**Order Lifting Stay,
Discharging Order to Show Cause,
and Appointing Guardian Ad Litem**

[ECF Nos. 83, 84]

    Plaintiffs Theodore Leach and James Kerrigan sue Dennett Ingram, EpicUp Holdings, Inc. (Arizona), EpicUp PTE, Ltd, and EpicUp Holdings, Inc. (Wyoming) (collectively, Ingram) over the failed sale of IP addresses. The defendants responded with counterclaims against Leach and James,[1] as well as their corporate entities J.F.K. Investments, Inc. and T.J.L. Investments, Inc. During discovery, the defendants learned that James's son Jason was involved in the sale too, and some comments about James's health prompted defense counsel to seek his medical records. Those records showed that James suffers from conditions that may be impacting his ability to pursue this litigation, so the defendants filed a motion suggesting James's incompetency and seeking a court determination of competency. In May 2024, I found that the defendants' representations triggered the court's independent obligation to consider whether a litigant is adequately represented. So I ordered plaintiffs' counsel to show cause "whether James

---

[1] The dispute currently pending before the court concerns James Kerrigan and his son Jason Kerrigan. I refer to each individual by his first name for clarity's sake, and I intend no disrespect by doing so.

has the capacity to sue on his own behalf or has an adequate representative to protect his interests."[2]

Having considered the responsive briefing, I conclude that this complication is largely the product of attorney overzeal. While the medical records and declarations in support of Jason's representation of James support the conclusion that James is not capable of representing himself in this lawsuit at this point, the record suggests that Jason is an adequate representative for his father, a role he has fulfilled for some time. To clear up any confusion about Jason's legal ability to represent his father in this manner and to help the parties return to the litigation's merits, I appoint him as guardian ad litem for James in this case.

## Discussion[3]

Federal Rule of Civil Procedure 17, the rule governing who has the capacity to sue in federal court, dictates the representation of incompetent persons. It gives authority to sue on behalf of an incompetent person to duly appointed representatives (i.e., "a general guardian, a committee, a conservator, or a like fiduciary") or, if "an incompetent person does not have a duly appointed representative," he "may sue by a next friend or by a guardian ad litem."[4] If an incompetent person is not represented, the rule says that "the court must appoint a guardian ad litem—or issue another appropriate order—to protect" him in the action.[5] While the court "need

---

[2] ECF No. 83 at 9.

[3] The parties are familiar with the facts of this dispute, so I don't repeat them here. I instead incorporate herein the overview of this dispute contained in my show-cause order. *See* ECF No. 83 at 2–5.

[4] Fed. R. Civ. P. 17(c)(1) & (2).

[5] Fed. R. Civ. P. 17(c)(2).

2

not appoint a guardian ad litem if it determines the person is or can be otherwise protected, it is under a legal obligation to consider whether the person is adequately protected."[6]

An individual's capacity to sue in federal court is determined "by the law of the individual's domicile."[7] Because James is a Nevada resident, I look to Nevada law. The parties agree that Nevada Revised Statute 159.019 defines capacity to be sued in a civil case. That statute directs that "[a] person is 'incapacitated' if he or she . . . is unable to receive and evaluate information or make or communicate decisions to such an extent that the person lacks the ability to meet essential requirements for physical health, safety[,] or self-care without appropriate assistance."[8]

Plaintiffs' counsel contends that James is competent to continue litigating this case with Jason's help—an arrangement that has been in place during most of this lawsuit and stems from a power of attorney signed in 2017.[9] He points to James's doctor's declaration averring that, while James has a progressive condition characterized by a "progressive decline in motor function, memory, and behavior" and that he suffers "some impairment in his ability to receive

---

[6] *United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cnty., State of Wash.*, 795 F.2d 796, 805 (9th Cir. 1986) (noting that Rule 17(c) "requires a court to take whatever measures it deems proper to protect an incompetent person during litigation").

[7] Fed. R. Civ. P. 17(b)(1).

[8] Nev. Rev. Stat. § 159.019.

[9] Counsel also devotes substantial page space to arguing that James was competent when he agreed to loan Dennett Ingram money for the deal underlying this action and asserting that the court cannot consider James's competency at all because "this lawsuit is not about [James's] competency and thus cannot be decided in this case [sic]." ECF No. 85 at 5. These tangents are irrelevant to this discrete, show-cause issue and misconstrue the purpose of these ancillary proceedings. Whether someone lacks the capacity to sue in federal court is an issue that this court must resolve when it receives credible information that a party is incompetent. Nothing in this order should be construed as a conclusion about James's competence during the events underlying this lawsuit.

3

and evaluate information," he is "not incapacitated."[10] He also provides several affidavits from James's family and friends—though not from James himself—attesting to Jason's ability to manage James's affairs.[11]

It appears that plaintiffs' main contention isn't that James is competent to litigate this case on his own, but that Jason is an adequate representative to protect his father's interests. Indeed, every declaration attached to plaintiffs' response focus solely on how Jason has cared for James: he has hired individuals to be with him at almost all times, and he coordinates all of James's medical care, his social activities, and his financial affairs. Given the medical evidence presented in this case, the declarations provided by plaintiffs, and the plaintiffs' failure to present any contrary evidence showing that James is able to "meet essential requirements for physical health, safety[,] or self-care without appropriate assistance," I find that James is incompetent to litigate this case without adequate representation at this time. I thus must consider whether Jason is an adequate representative for James.

Defense counsel asserts that he isn't, relying on tenuously relevant attacks on Jason's interests in this litigation and the care that he has provided to his father, as well as selective samplings of deposition testimony showing that James had little knowledge of this lawsuit before

---

[10] ECF No. 81 at 9–10 (April 25, 2024, declaration of Dr. Odinachi Oguh).

[11] ECF No. 85-2 (Jason Kerrigan's declaration); ECF No. 85-3 (Theodore Leach's declaration); ECF No. 85-4 (declaration of Brent Bryson, James's neighbor, averring that Jason was often at James's house coordinating his care and has "always presented himself as a loving and caring son"); ECF No. 85-5 (declaration of Laura Donnelly, James's neighbor and friend, averring that Jason coordinates James's medical care, social affairs, and community networks); ECF No. 85-6 (declaration of Joseph Ramon Jennings, James's friend, affirming Jason's "commitment to his father's welfare"); ECF No. 85-7 (declaration of Lisa Williams, James's step-daughter, stating that "Jason diligently manages all of our father's affairs"); ECF No. 85-8 (neighbor Terry Frederick's declaration, attesting to Jason's "dedication and competence in caring for his father"); ECF No. 85-9 (neighbor Vlashi Prifti's declaration, noting that Jason competently cares for his father).

the deposition and misremembered some information. He also inundates his brief with vigorously disputed factual statements that go directly to the merits of this case, none of which I consider here. None of defense counsel's observations rebut the conclusion compelled by several sworn affidavits from James's friends and family: Jason has been representing—and can continue to represent—James in this litigation.

The parties dispute whether Jason is already legally empowered to do so. Plaintiffs have produced two documents giving Jason power of attorney ("PoA") over James's affairs: a durable PoA from 2017, and a non-durable one from 2021. The 2017 PoA gives Jason power to manage all of James's affairs, including "legal affairs, claims[,] and litigation," and is not affected by James's "subsequent disability or incapacity."[12] The 2021 document states that it "revokes any and all powers of attorney" James executed in the past and does not survive James's incapacity.[13] Jason declares that the 2021 PoA was never completed—it was only created because James couldn't locate his 2017 documents and, because of the COVID-19 pandemic, he "wanted a power of attorney right away."[14] So Jason "pulled a form off of the internet and filled out a non-durable power of attorney," but the "form was never properly used and it was not properly witnessed or notarized"[15] and is thus invalid. He also claims that it was produced in discovery due to attorney error.

NRS 162A.220 governs execution of powers of attorney. It states that "a signature on a power of attorney is presumed to be genuine if the principal acknowledges the signature before a

---

[12] ECF No. 85-1 at 31–35.
[13] ECF No. 76-5 at 2.
[14] ECF No. 85-2 at 5 ¶ 11.
[15] *Id.*

notary public or other individual authorized by law to take acknowledgements."[16]  The 2021 PoA is not notarized, but it doesn't appear that such a defect renders it immediately invalid.  It instead erases the presumption that the principal's signature is genuine.  The parties don't brief how the court is meant to proceed from there.[17]

But this PoA distraction is ultimately irrelevant because with or without a PoA, I conclude that Jason is an adequate representative for James.[18]  If the 2017 PoA governs, then Jason has been appointed as James's legal representative.  If it doesn't, defense counsel hasn't proffered any competent evidence suggesting that Jason cannot serve as James's guardian ad litem or next friend.  So to clear up any confusion and allow the parties to get back to the merits of this case, I appoint Jason Kerrigan as James Kerrigan's guardian ad litem for the purposes of this action.

## Conclusion

IT IS THEREFORE ORDERED that **the court's order to show cause is DISCHARGED**, and **the stay of deadlines in this case is LIFTED.**

IT IS FURTHER ORDERED that **Jason Kerrigan is hereby appointed as guardian ad litem for James Kerrigan for the purposes of this case**.

---

[16] Nev. Rev. Stat. § 162A.220(1).

[17] In the event that the 2021 PoA is valid and revokes the 2017 PoA, I make no findings about whether or when James's possible incompetence terminated the non-durable 2021 document. The definition of incompetence that applies to invalidate powers of attorney differs from the one I applied to this proceeding, and I make no conclusions about whether that definition has been satisfied by the evidence produced thus far.  *Compare* Nev. Rev. Stat. § 162A.070 (defining incapacity under the statutory scheme applicable to powers of attorney) *with* Nev. Rev. Stat. § 159.019 (defining "incapacitated" under the statutory scheme applicable to guardianship of adults).

[18] If this power-of-attorney dispute has any implications for the resolution of this case, counsel for both sides should endeavor to provide better, legally supported arguments on this point in future briefing.

IT IS FURTHER ORDERED that **the parties must meet and confer** about their intentions to refile the amendment-related motions that were previously denied without prejudice by Magistrate Judge Nancy J. Koppe while this competency issue remained pending. If they so intend, the parties must refile their motions, as well as their opposing and supporting briefs, by August 16, 2024.

IT IS FURTHER ORDERED that **dispositive motions are due by September 6, 2024**.

_____
U.S. District Judge Jennifer A. Dorsey
August 7, 2024